Kirby, Appellant, v. Stahlnecker et al.

398

Argued March 11, 1941. Before KELLER, P. J., CUNNINGHAM, STADTFELD, RHODES and HIRT, JJ.

Joseph S. Clark, Jr., of Dechert, Smith & Clark, for appellant.

Charles R. Davis, Special Deputy Attorney General, with him R. Carlyle Fee, Assistant Special Deputy Attorney General, and Claude T. Reno, Attorney General, for appellee.

OPINION BY KELLER, P. J., July 18, 1941:

Charles A. Kirby has appealed to this court from the decision of the Unemployment Compensation Board sustaining his dismissal by the Secretary of Labor and Industry from the position of clerk in the Bureau of Employment and Unemployment Compensation. The matter is not complicated by any hearing or decision by a prior board.

The ground for appellant's dismissal was that he had knowingly and intentionally made false statements and representations as to material facts with respect to his previous employment record, in his application for appointment to the position held by him.

Section 510 of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, provides inter alia: "In any appeal to the Superior Court the findings of the board or referee, as the case may be, as to the facts, if supported by the evidence and in the absence of fraud, shall be conclusive, and in such cases the jurisdiction of the court shall be confined to questions of law."

Appellant (1) challenges the application of this section to cases involving dismissal of an employee because of false or fraudulent representations; and (2) he insists it should not be applied to cases where the board, in effect, originated the complaint or instituted the charge which resulted in his dismissal.

(1) As to the first position, we understand that the

phrase 'in the absence of fraud,' as used in the sentence, "the findings [of fact] of the board or referee ...... if supported by the evidence and in the absence of fraud, shall be conclusive," refers to fraud at the hearing before the referee or board which induced, or contributed to the findings, and does not mean fraudulent acts of the applicant which formed the occasion for the hearing. It would be a strange construction indeed which would give one accused of fraud a better position before an appellate court than any other appellant. The clause means that the appellate court will not review findings of fact which are supported by evidence unless it can be shown that they were procured or contributed to by fraud.

(2) We are in some sympathy with the thought underlying the second position. The greatest cause for dissatisfaction with the work of administrative boards arises from those provisions in the statutes creating them, which permit the administrative body to act as *complainant* or *prosecutor* as well as the *tribunal* which passes judgment upon the complaint or charge made by it. A separation of these functions would accord more with the spirit of fair play inherent in our system of administering justice, but similar provisions in our Public Service Company Law (Act of July 26, 1913, P. L. 1374, and its amendments), our Public Utility Law (Act of May 28, 1937, P. L. 1053, sections 1101-1107), and our Labor Relations Act (Act of June 1, 1937, P. L. 1168, sections 9 and 10, as amended by Act of June 9, 1939, P. L. 293), have not been held unconstitutional by our Supreme Court. Some of the hostility to, or criticism of, such provisions might be avoided, if in the clause regulating appeals from the orders of the administrative body, a distinction should be made between proceedings begun on its own initiative and those arising from complaints made by others, and the clause providing that the findings of fact of the ad-

ministrative body, if supported by substantial competent evidence, should be conclusive on the appellate court, would be limited to cases arising on the complaint of others, thus allowing the court to review findings of fact where the board, or commission, or administrative body had acted in the dual capacity of prosecutor and judge or camplainant and arbiter. But the present law does not so provide. However, in order to avoid all possible ground of complaint on this score, we have read and considered the evidence in the record of this case and are of opinion that it supports the findings of fact of the board and justifies the board's conclusions of law, and the decision appealed from.

The institution of this new bureau or division into the Department of Labor and Industry, calling for the appointment of many civil service employees on the basis of merit ratings, following examinations held pursuant to applications therefor, necessitated prompt action, without opportunity for immediate close examination and checking of the statements contained in the respective applications. This was gone over later when the initial rush was over. This appellant's application contained an evident erasure or alteration, made by the use of an ink remover, in his *record of prior employment,* which came to the attention of the board in its subsequent checking up of the data. Over this erasure there had been written a record of his employment from "August 1937 to date" as "advanced clerk" in the "Unemployment Compensation Division at a salary of $1140," which was the position and salary to which he received a temporary appointment on *August 10, 1937.* His application was dated July 16, 1937, sworn to July 19, 1937 and the postmark showed that it had been mailed July 28, 1937, or thirteen days before his alleged temporary appointment.

On the same sheet also appeared the following questions and answers: "Are you an employee of the Un-

employment Compensation Division?" Following this was the answer 'Yes,' which it was clearly apparent had been written over an erasure, which it is now admitted, read, 'No.' "If so give date employed and position" (Answer) *"Adv. clerk Aug. 1937" "Salary $1140."* He thus apparently claimed credit, and had received a four-point rating, for an employment which had not begun when he signed and mailed his application.

When the board called his attention to this discrepancy, and to the apparent erasures or alterations in his record of employment, he disclaimed all knowledge of the erasure—could not tell when it was made, did not recall if he made it, or what it was; but admitted that if he had changed it, he must have done it after he came into the division, after August 10, 1937; that the entry was in his handwriting, and that his position in the office gave him access to the files and records of the division.

Subsequently, the board sent the application to the Document Examiner of the Pennsylvania Motor Police for the purpose of examining the obliterations, and it was reported back that under the record of employment first above referred to had previously been written "clerk" "General Office Work," "$1000." "——— D. Kaier Co." "Brewery." "Went out of business" ...... "Mahanoy City, Pa."; and the examiner reported that he was of opinion that the chemically erased writing and the overwriting were written by the same person who executed the remaining questioned handwriting appearing on both questioned items. Inquiry of the Chas. D. Kaier Company, a brewery located in Mahanoy City, Pa., revealed that the appellant had never been employed by it in 1937 or at any other time.

When the results of the examination of his application by the Document Examiner of the Bureau of Motor Police were learned by appellant, his memory revived quickly and with great detail. He recalled that as originally entered the line read that he was employed

from February 1937 to June 1937, or July 1937, for six or seven months as a clerk by the C. D. Kaier Brewing Company, at a salary less than the amount stated in the application; and that the answer to the question below as to his being an employee of the Unemployment Compensation Division had been 'No,' and had been altered by him to 'Yes,' and the details subsequently written in.

He gave as his excuse for doing this, that he knew that his employment record was not sufficient to meet the requirements, and that his aunt, Mrs. Kaier, who was dead at the time of the hearing, had suggested that he make the false entry, and that she would corroborate it, and that he did so, but subsequently and before filing it he had erased it with a chemical ink remover and inserted his promised temporary employment as a clerk in the Unemployment Compensation Division, which did not begin until August 10, following, and therefore could not possibly furnish any justification for a credit rating on his examination papers.

He held a position in the division where he could make the alterations. He admitted that he had made additions to other applications (p. 21a). His statement that the only change he made after his appointment was the title of his position, is not credible to us. If believed, he got a credit rating on his *prior* employment record for a position that he did not enter upon until thirteen days after his application was filed; as over against a credit rating for an employment of six or seven months with the Kaier Brewery, which was admittedly false.

A review of all the evidence convinces us that he made false and fraudulent statements in his application for the purpose of showing a better employment record, and that as a result of such false representation he secured a higher credit rating, which assisted in securing him a position as clerk in the civil service of the Unemployment Compensation Division; that he wilfully

erased the superficial evidence of this false representation and inserted in its place a statement of his employment which began on August 10, and which furnished no basis whatever for a credit rating on his examination application; that his testimony before the board, taken as a whole was not only lacking in candor, but was untruthful, and that the board was fully justified in its findings of fact and conclusions of law, and in its decision upholding his dismissal.

We said in *Thurston v. Unemployment Compensation Board of Review*, 140 Pa. Superior Ct. 254, 13 A. 2d 890:

"Furthermore, it is desirable as a matter of public policy that the civil service employees under the statute shall be composed of honest and truthful persons; and fraud and misrepresentation in securing the appointment, are grounds for dismissal. See *Kassarich v. Unemployment Compensation Board of Review*, 139 Pa. Superior Ct. 599, 12 A. 2d 823; *Gangewer v. Unemployment Compensation Board of Review*, 137 Pa. Superior Ct. 453, 9 A. 2d 490; Sec. 208(s) of the Act of December 5, 1936, supra. We are of opinion that a prosecution by summary proceeding is not necessary under that section before the employee can be summarily dismissed; at least where, as here, the false statement or misrepresentation as to a material fact is admitted by him. The penalty provided for in that section by summary proceeding is specially intended for persons who do not receive an appointment under the civil service or who are not themselves applicants but wilfully furnish false information as respects an applicant, for in no other way can they be punished; and while also applicable to employees, it need not be resorted to before dismissal in a clear case."

Affirmed.